IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

CMFG LIFE INSURANCE COMPANY,

    Plaintiff,

v.                                        Case No.: GJH-13-3032

WILLIAM A. SCHELL, JR., et al.,

    Defendants.

## MEMORANDUM OPINION

This case involves a dispute over life insurance benefits payable under an Annuity Contract as the result of the death of Sandra B. Lee ("Lee"). ECF No. 1 at 2. On October 11, 2013, Plaintiff CMFG Life Insurance Company ("CMFG") filed a Complaint in Interpleader naming Defendant William A. Schell, Jr. ("Schell"), and Defendants Michelle M. Lee ("M. Lee"), Kim R. Lee ("K. Lee"), and Marc A. Brookins (collectively "Lee's Children") as potential beneficiaries. ECF No. 1. The Complaint was filed pursuant to 28 U.S.C. § 1335, requesting the Court order Defendants to answer and present their claims to the Annuity Contract, which was worth $116,787.24. *Id.* In short, the dispute hinges on whether Schell's attempt to remove Lee's Children as beneficiaries of the Annuity Contract, leaving himself as sole beneficiary, was valid.

This Memorandum Opinion and accompanying Order address Lee's Children's Renewed Motion for Summary Judgment on Liability on their crossclaim seeking, *inter alia*, a Declaratory Judgment that Schell's "Change of Beneficiary" form is null and void. ECF No. 68. This motion has been fully briefed. *See* ECF Nos. 68, 72, & 73. The Court finds that a hearing is unnecessary. *See* Loc. R. 105.6 (D. Md. 2015). For the reasons stated below, Lee's Children's Renewed Motion for Summary Judgment is GRANTED, in part, and DENIED, in part.

I.  **BACKGROUND**

CMFG, an insurance company, issued a flexible premium deferred variable and fixed annuity ("Annuity Contract") to decedent Sandra B. Lee on April 15, 2003. ECF No. 1-1. At that time, Lee designated four beneficiaries: her husband, William A. Schell, Jr., and Lee's Children. *Id.*

Lee died on December 14, 2012 at 1:10 PM. ECF No. 68-1 at ¶ 6; *see* ECF No. 68-5. On the same day, Schell delivered a Change of Beneficiary form to the office of Lee's financial advisor, Nelson Turner, an employee of CUNA Mutual Group. ECF No. 68-1 at ¶ 8; ECF No. 72 at 6. Schell states that he delivered the form to Turner's office at approximately 11:00 – 11:30 AM. ECF No. 72-2 at ¶ 12. According to the transmission information at the top of the form, CMFG received the Change of Beneficiary form by fax at 2:01 PM. ECF No. 1-3. The Change of Beneficiary form, which contained Schell's signature but not Lee's signature, named Schell as the sole beneficiary. ECF No. 1 at ¶ 9. According to Schell, he signed the Change of Beneficiary form pursuant to a "Durable Power of Attorney for Financial Management" ("DPA") agreement—making Schell the attorney-in-fact for Lee—which Lee signed on December 6, 2012. ECF No. 1 at ¶ 9; *see also* ECF No. 1-4.

After receiving the form, CMFG advised: "Our records show a beneficiary change was received by fax on December 14, 2012. However, since this form was not received and recorded prior to Lee's death we regret we are not able to approve the change." ECF No. 20 at ¶ 27. CMFG then received claim forms from Lee's Children. ECF No. 1 at ¶ 10. Schell advised CMFG that he was entitled to the entire benefit due to the Change of Beneficiary form and instructed CMFG not to pay Lee's Children. *Id.* To resolve the matter, CMFG filed this interpleader suit, and has deposited the proceeds of the Annuity Contract into the registry of the

Court pending resolution of this litigation. ECF No. 19.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts view the record as a whole and in the light most favorable to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). While the movant bears the burden of demonstrating the absence of a genuine issue of material fact, it is the non-moving party's burden to establish the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). The non-moving party must present evidence that is "significantly probative" and more than a "mere scintilla." *Celotex Corp.*, 477 U.S. at 327.

In an action based on diversity jurisdiction, Maryland choice of law rules apply. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *see also CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). "In insurance contract cases, Maryland courts generally follow the rule of *lex locus contractu*, which requires that the construction and validity of a contract be determined by the law of the state where the contract is made." *Roy v. Nw. Nat'l Life Ins. Co.*, 974 F. Supp. 508, 512 (D. Md. 1997). "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs." *Id.* at 512. "The *locus contractu* of an insurance policy is the state in which the policy is delivered and the premiums are paid." *Aetna Cas. & Sur. Co. v. Souras*, 552 A.2d 908, 911 (Md. Ct. Spec. App. 1989).

In the instant action, the Annuity Contract was signed by CUNA Mutual Life Insurance Company in Iowa, but delivered to Lee, the policy owner, who signed it in Maryland. *See* ECF

3

No. 1-1. As Lee lived in Maryland, the premiums are presumed to be paid in Maryland. *Id.* Further, the Durable Power of Attorney agreement was signed in Maryland and contains a Maryland choice of law provision. ECF No. 38-7. Schell signed the Change of Beneficiary form in Maryland. ECF No. 68-1 at ¶ 8; ECF No. 72 at 6. Accordingly, Maryland law applies to Lee's Children's claims relating to the Annuity Contract, the Durable Power of Attorney agreement, and the Change of Beneficiary form.

### B. Lee's Children's Motion for Summary Judgment on Liability

Lee's Children advance two primary arguments for invalidating Schell's Change of Beneficiary form. First, Lee's Children argue, the form is invalid because it was received by CMFG after Lee's death, rendering the change invalid. Second, Lee's Children argue that the DPA prohibited Schell from personally gaining from any transaction made on behalf of Lee. The Court will address both of these arguments.

#### 1. Timing of the Submission of the Change of Beneficiary Form

Under Maryland law, an insurance policy is a contract interpreted under the principles of contract law, which requires a court to look "'first to the contract language employed by the parties to determine the scope and limitations of the insurance coverage.'" *Ohio Nat'l Life Assur. Corp. v. Jones*, No. CCB-09-2044, 2012 U.S. Dist. LEXIS 759, at *12–13 (D. Md. Jan. 4, 2012) (citations omitted). "[T]he ability of the insured to change the designated beneficiary is governed by the terms of the written policy, not state law." *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 561 (D. Md. 1994).

Section 4.2 of the Annuity Contract states, "[y]ou may change the owner or beneficiary of this contract by written request any time while the annuitant is alive. The change will take effect as of the date you signed it." ECF No. 1-1 at § 4.2. Neither party disputes the clear

requirement of the Annuity Contract that any change to the beneficiary must have taken place while the annuitant, Lee, was alive. The disagreement is over whether that occurred here. Schell notes that the Annuity Contract states that the change is effective on the date signed and that the Change of Beneficiary form was signed on the date of Lee's death and before her passing. ECF No. 72 at 3–4. Hence, according to Schell, the change in beneficiary was effective when the form was signed hours before Lee's death. *Id.* But Schell's argument ignores the Annuity Contract's definition of a "written request," which is the mechanism by which a change must occur. "Written request" is a "signed and dated written notice in a form satisfactory to us and *received in our home office*." ECF No. 1-1 at 9 (emphasis added). "Home Office" is defined as "CUNA Mutual Life Insurance Company, 2000 Heritage Way, Waverly, Iowa, 50677." ECF No. 1-1 at 8. Although Schell "changed the beneficiary and delivered the form to Mr. Turner's office prior to the death of his wife," ECF No. 72 at 6, the form was not received at the home office until after Lee's death, ECF No. 68 at 3–4.[1] As a result, there was no "written request" made while Lee was alive. The Change of Beneficiary form was therefore ineffective according to the terms of the Annuity Contract.

## 2. Power of Attorney Authorization

A Power of Attorney "is a written document by which one party, as principal, appoints another as agent (attorney in fact) and confers upon the latter the authority to perform certain specified acts or kinds of acts on behalf of the principal." *King v. Bankerd*, 303 Md. 98, 105 (1985). The Power of Attorney controls the scope of the attorney-in-fact's authority. *Pension Comm. Heileman-Balt. Local 1010 IBT Pension Plan v. Bullinger*, No. HAR 92-204, 1992 U.S. Dist. LEXIS 17325, at *6 (D. Md. Oct. 29, 1992). Construction of the Power of Attorney "is

---

[1] Indeed, Mr. Turner testified in his deposition that the normal policy for processing a change of beneficiary form was for it to be "received in the office and then sent to the home office," and that his understanding is that the change was not effective until it was received in the home office. ECF No. 68-10 at 7–8.

considered a matter of law to be resolved by the trial judge." *Id.* at *5. "Courts should determine the parties' intent by evaluating the language and purpose of the document 'in light of the surrounding circumstances.'" *JHF Vista USA, Ltd. v. John S. Connor, Inc.*, No. CCB-09-30, 2010 U.S. Dist. LEXIS 10176, at *10 (D. Md. Feb. 5, 2010). However, a Power of Attorney is "construed narrowly and deemed to grant only those powers which are clearly expressed in the document." *Bullinger*, 1992 U.S. Dist. LEXIS 17325, at *7–8.

Lee's Children argue that Schell's attempt to make himself the sole beneficiary was beyond the scope of his authority because he was not empowered to act as Lee's attorney-in-fact for his own benefit. ECF No. 68-1 at 6. The Court agrees. Under Maryland law, a fiduciary may not use his position to achieve personal gain absent authorization by the grantor. *See Levin v. Levin*, 405 A.2d 770, 777 (Md. Ct. Spec. App. 1979) ("As the authorities cited above make clear it was a breach of Joel's fiduciary duty to appropriate corporate funds to his own use without authorization by the corporation."). Here, the DPA does permit the attorney-in-fact to modify insurance policies. ECF No. 1-4 at ¶ 8.e. But paragraph 11 of the DPA provides that the "Attorney-in-Fact is not allowed to personally gain from any transaction he or she may complete on [Lee's] behalf." *Id.* at ¶ 11. While Schell explains that he "did not contemplate that this boilerplate language that would prohibit [a] neutral party from using the Power of Attorney for self-dealing would be construed against [him]," ECF No. 72-2 at 5, "a party who signs a contract without first reading it 'cannot avoid the contract's effect by pleading ignorance,'" *JHF Vista USA, Ltd.*, 2010 U.S. Dist. LEXIS 10176, at *11 (citing *Cornell v. Council of Unit Owners Hawaiian Vill. Condos., Inc.*, 983 F. Supp. 640, 646 (D. Md. 1997)). Because Schell would achieve personal gain if this transaction were allowed, the Change of Beneficiary form is invalid for this reason as well.

### C. Tortious Interference with Contract

Lee's Children allege that Schell should be held liable for tortious interference with contract. A claim for tortious interference with contract requires: "1) the existence of a contract between plaintiff and a third party; 2) defendant's knowledge of that contract; 3) defendant's intentional interference with that contract; 4) breach of that contract by the third party; 5) resulting damages to the plaintiff." *Fraidin v. Witzman*, 611 A.2d 1046, 1057 (Md. Ct. Spec. App. 1992) (citation omitted). Under Maryland law, "'there can be no doubt that the original named beneficiary' to an insurance policy 'has standing as a third party beneficiary to sue for breach of contract.'" *Higdon v. Lincoln Nat'l Ins. Co.*, No. ELH-13-2152, 2014 U.S. Dist. LEXIS 170323, at *21–22 (D. Md. Dec. 8, 2014).

Lee's Children argue that "Mr. Schell both knew of the contract and of the Children's lawful interest in it" and "took action to attempt to deprive the Children of their lawful interest in the Annuity Contract. His action has resulted in not only delayed payment of the Annuity Contract funds, but in unnecessary litigation and attorney's fees." ECF No. 68-1 at 13. While Lee's Children have standing as third party beneficiaries, *see Higdon*, 2014 U.S. Dist. LEXIS 170323, at *22–23 ("A, an insurance company, promises B in a policy of insurance to pay $10,000 on B's death to C, B's wife. C is an intended beneficiary.") (quoting Restatement (Second) of Contract (1981), § 302 Comments), there has been no breach of contract and thus no tortious interference with contract. CMFG has performed its duty under the contract subject to the Court's determination of the rightful beneficiary. Lee's Children's motion for summary judgment on their claim of tortious interference with contract is DENIED.

### D. Trespass to Chattels/Conversion

Lee's Children's claim for trespass to chattels or conversion also fails. Conversion is "a distinct act of ownership or dominion exerted by a person over the personal property of another which either denies the other's right or is inconsistent with it. . . . [A] conversion occurs at such time as a person is deprived of property which he is entitled to possess." *Staub v. Staub*, 376 A.2d 1129, 1131 (Md. Ct. Spec. App. 1977). "Trespass to Chattel involves the 'intentional use or intermeddling with the chattel in possession of another,' such that 'the chattel is impaired as to its condition, quality, or value.'" *MCI Commc'ns Servs. v. Am. Infrastructure-MD, Inc.*, No. GLR-11-3767, 2013 U.S. Dist. LEXIS 113061, at * 51 (D. Md. Aug. 12, 2013) (citations omitted) (emphasis in original).

Lee's Children argue that Schell caused them to be "denied access to funds from the Annuity Contract which they should have been paid almost a year ago. The Children have incurred legal fees which would not have been necessary absent Mr. Schell's attempt to siphon the Annuity Contract funds away from the Children to himself." ECF No. 68-1 at 14. The cases cited by Lee's Children do not support their claim. In *Staub v. Staub*, the court found that conversion did not take place when a father had bonds intended for his son reissued in his name, but only when the father cashed the bonds. 376 A.2d 1129, 1132 (Md. 1977). Here, Schell has not accessed the proceeds. Similarly, in *Saunders v. Millinix*, the defendant took physical possession of the property, a car, by trick or deceit before selling the car without plaintiff's permission. 195 Md. 235, 240 (1950). While Schell has asserted a claim to the insurance proceeds, he has not exercised dominion or control over them. Lee's Children's motion for summary judgment on their claim for trespass to chattels/conversion is therefore DENIED.[2]

---

[2] Upon review of the record and the case law, the Court is of the view that summary judgment in favor of Schell dismissing Lee's Children's crossclaim causes of action II and III may be appropriate. Because Schell has not

## IV. CONCLUSION

For the reasons stated above, Lee's Children's Motion for Summary Judgment is GRANTED, in part, and DENIED, in part. Lee's Children's Motion for Summary Judgment on its request for Declaratory Judgment (crossclaim Cause of Action I) is GRANTED. The Change of Beneficiary Form dated December 14, 2012 is invalid and William A. Schell, Jr., Michelle M. Lee, Kim R. Lee, and Marc A. Brookins are each entitled to one-fourth share of the insurance proceeds held in the Court's registry pursuant to ECF No. 12. Lee's Children's Motion for Summary Judgment as to Tortious Interference with Contract (crossclaim Cause of Action II) and Trespass to Chattel/Conversion (crossclaim Cause of Action III) is DENIED. Pursuant to Federal Rule of Civil Procedure 56(f)(3), Lee's Children have fourteen days to oppose summary judgment in favor of Schell dismissing Lee's Children's claims for Tortious Interference with Contract (crossclaim Cause of Action II) and Trespass to Chattel/Conversion (crossclaim Cause of Action III). If a response is not received within that time period, those counts will be dismissed with prejudice and the case will be closed.

Dated: January 29th, 2016

GEORGE J. HAZEL
United States District Judge

---

moved for summary judgment, however, the Court, pursuant to Federal Rule of Civil Procedure 56(f)(3), hereby provides Lee's Children with notice and a time to respond to the Court's desire to consider summary judgment given the Court's finding that CMFG did not breach the Annuity Contract for the purpose of the tortious interference crossclaim and that Schell did not exercise dominion and control over the insurance proceeds for the purpose of the trespass/conversion crossclaim. Any such response shall be filed within fourteen days of this opinion, or those causes of action will be dismissed with prejudice and the case will be closed.